UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WANTWAZ DAVIS,

        Plaintiff,                              Hon. Wendell A. Miles

v.                                              Case No. 1:06 CV 690

THOMAS BELL, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants Bell's, Gidley's, Baker's, McQueary's, Miller's and Kipp's Motion for Summary Judgment</u>. (Dkt. #18). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **denied**.

## BACKGROUND

Pursuant to Michigan Department of Corrections (MDOC) regulations, smoking (or the use of any tobacco product) is prohibited "inside all Department occupied buildings, including prisoner housing units." Michigan Department of Corrections Policy Directive 01.03.140 ¶¶ B-C. General population prisoners are nonetheless permitted to possess smoking materials in their cells. *Id.* at ¶¶ I-K. Pursuant to MDOC regulations each MDOC facility is also required to maintain "tobacco-free housing for general population prisoners." *Id.* at ¶ M. Prisoners residing in a tobacco-free housing unit are not permitted to smoke (or use tobacco products) but are additionally prohibited from even purchasing or possessing smoking materials. *Id.* at ¶ N.

Plaintiff asserts that despite the MDOC's smoking ban prison officials are "well-aware" that general population prisoners continue to smoke in the "non-smoking" housing units. (Dkt. #28 at 2). According to Plaintiff, prison officials issue "hundreds" of misconduct tickets daily to prisoners who are caught smoking in the general population housing units. *Id.* Plaintiff further asserts that:

> When you walk into the unit, the first thing you smell is tobacco smoke; when you walk down the halls, it is so strong that it covers all smells. The ceiling fans constantly circulate the smoke so that no area in the unit is free of ETS [environmental tobacco smoke].

(Dkt. #28 at 3).

Plaintiff was transferred to the Boyer Road Correctional Facility (OTF) on April 8, 2006, and housed in the general population. (Dkt. #19, Bell Affidavit; Dkt. #27 at 2). On April 10, 2006, health care officials issued to Plaintiff a special accommodation to be placed in smoke-free housing. (Dkt. #28, Exhibit A). On April 12, 2006, Plaintiff requested that he be transferred to the "tobacco-free housing unit." (Dkt. #1 at 4; Dkt. #28 at 1). Prison officials responded to Plaintiff's request by stating that he was "2nd on non-white list." (Dkt. #28 at 1; Dkt. #28, Exhibit B). On April 14, 2006, Plaintiff submitted a Step I grievance in which he again requested to be transferred to the "non-smoking" housing unit. (Dkt. #28 at 2; Dkt. #28, Exhibit C). Plaintiff asserted that the requested transfer was necessary because he was "still being ailed by second hand smoke" that caused him to experience dizziness and an accelerated heart rate. (Dkt. #28, Exhibit C).

On April 18, 2006, Plaintiff "passed out in the [housing] Unit from being subjected to 'secondary' tobacco smoke." (Dkt. #28 at 2). Plaintiff was "rushed" to the hospital where he was diagnosed with "severe-asthma resulting from second hand smoke." The following day, Plaintiff was examined by physician's assistant Howard Tyree who concluded that Plaintiff's "exposure to cigarette smoke triggered a bronchospasm that resulted in a syncopal episode." (Dkt. #28 at 2; Dkt. #28, Exhibit

D). Despite the recommendation from health care officials that Plaintiff be placed in a "tobacco-free-non-smoking-unit," Plaintiff was returned to the general population. (Dkt. #28 at 2).

On April 25, 2006, Plaintiff was again examined by physician's assistant Tyree. (Dkt. #28 at 2; Dkt. #28, Exhibit D). Plaintiff reported that he was "tolerating more exertion," but was still experiencing shortness of breath. (Dkt. #28, Exhibit D). Plaintiff also reported that he was "regularly awakened (3 times nightly) with shortness of breath [and] cough." Plaintiff was diagnosed with asthma and enrolled in the pulmonary clinic. Mr. Tyree reiterated that Plaintiff be housed in a "smoke free environment." *Id.*

On May 1, 2006, Plaintiff was examined by Amie Jo Gaskill, R.N. (Dkt. #28 at 3; Dkt. #28, Exhibit E). Plaintiff reported that he was "around too much cigarette smoke and it makes him feel like he can't get enough air." (Dkt. # 28, Exhibit E). Plaintiff asked the nurse "how long he has to wait to get to the non-smoking unit." According to Nurse Gaskill, Defendant Kipp informed her that Plaintiff was "on the top of the list" to be moved to the tobacco-free housing unit. *Id.*

On May 4, 2006, Plaintiff was taken to the emergency room after experiencing difficulty breathing. (Dkt. #28 at 3; Dkt. #28, Exhibit F). Plaintiff reported that his breathing difficulty resulted from being housed in the "smoking area of the prison." (Dkt. #28, Exhibit F). Plaintiff again requested a transfer to the "non-smoking" housing unit. *Id.* Plaintiff was diagnosed with a "bronchial irritation" for which avoidance of second hand smoke was prescribed. (Dkt. #28 at 3; Dkt. #28, Exhibit G). Plaintiff was transferred to the tobacco-free housing unit later that day. (Dkt. #28 at 3).

Plaintiff asserts that residing in the general population housing unit, in which prisoners routinely smoked, caused him to experience "sustainable injuries" to his health. *Id.* Plaintiff claims that by failing to promptly transfer him to the tobacco-free housing unit Defendants violated his Eighth

Amendment right to be free from cruel and unusual punishment. (Dkt. #1; Dkt. #28). Defendants have now moved for summary judgment as to Plaintiff's claims. For the reasons discussed herein, the Court recommends that Defendants' motion be denied.

## SUMMARY JUDGMENT STANDARD

In reviewing a motion for summary judgment, the Court must confine itself to the narrow questions of whether there exist "no genuine issue[s] as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a Rule 56 motion, the Court cannot try issues of fact, but is empowered to determine only whether there exist issues in dispute to be decided in a trial on the merits. *See Perez v. Aetna Insurance Co.*, 96 F.3d 813, 819 (6th Cir. 1996). The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

A motion for summary judgment requires the Court to view "inferences to be drawn from the underlying facts...in the light most favorable to the party opposing the motion." *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The opponent, however, has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.'" *Historic Preservation Guild of Bay View v. Burnley*, 896 F.2d 985, 993 (6th Cir. 1989).

As the Sixth Circuit has recognized, the Supreme Court has encouraged the granting of summary judgments, as such may be "an appropriate avenue for the 'just, speedy and inexpensive determination' of a matter." *Kutrom v. City of Center Line*, 979 F.2d 1171, 1173 (6th Cir. 1992). Consistent with this concern for judicial economy, "the mere existence of a scintilla of evidence in

support of the [non-moving party's] position will be insufficient." *Anderson*, 477 U.S. at 252. Furthermore, mere allegations do not suffice. *See Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989) ("the party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact").

## ANALYSIS

**I.     Defendants are not Entitled to Summary Judgment**

Defendants assert that because they "enforced the non-smoking and tobacco-free policies to the best of their ability" they are entitled to summary judgment. According to Defendants, the Eighth Amendment is not violated by the "imperfect enforcement" of the MDOC's non-smoking policies. However, the question is not whether Defendants enforced MDOC policy to the best of their ability or whether such attempts at enforcement were imperfect. Instead, the question is whether Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005).

The analysis by which Defendants' conduct is evaluated consists of two steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this

respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. If the objective test is met, the Court must then determine whether the officials possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.*

In other words, Plaintiff must establish that Defendants "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847).

With respect to the objective component, Plaintiff must demonstrate that his exposure to tobacco smoke caused him to experience "more than 'mere discomfort or inconvenience.'" *Talal*, 403 F.3d at 426 (quoting *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992)). Plaintiff must also establish that the health risk he experienced "is one which society deems 'so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk.'" *Talal*, 403 F.3d at 426 (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)). In analyzing the objective component of the analysis, the *Talal* court noted the following:

> Here, Talal alleges that he has been subjected to excessive levels of smoke at the hands of both staff and other inmates and that TCIP's ventilation system merely re-circulates smoke-filled air. Additionally, he has substantiated that he suffers from ETS allergy. The record contains medical documentation evidencing this fact and establishing that smoke causes Talal sinus problems and dizziness. On several occasions, medical staff recommended that Talal have a non-smoking cell partner.

> On at least one occasion, medical staff recommended that he be placed in a non-smoking unit. Based upon these facts, we conclude that Talal has alleged that he has a serious medical condition which is sufficiently serious to satisfy the objective component of the *Helling* test.

*Talal*, 403 F.3d at 427.

The present circumstance is essentially indistinguishable. Plaintiff alleges that he has been subjected to excessive levels of second-hand smoke which is constantly recirculated throughout the housing unit. Plaintiff alleges that he suffers from breathing difficulties caused by exposure to second-hand tobacco smoke. Such allegations are supported by the medical evidence thus far submitted. Plaintiff's care providers at least twice recommended that Plaintiff be transferred to a smoke-free housing unit. Accordingly, the Court finds that Plaintiff has presented evidence which if believed demonstrates that he suffered from a serious medical condition, thus satisfying the objective component of the analysis.

With respect to the subjective component of the analysis, Plaintiff must "allege specific incidents of deliberate indifference by prison officials." *Id.* at 427. As Defendants correctly recognize, "mere imperfect enforcement of a no-smoking policy does not rise to the level of deliberate indifference when prison officials make good faith efforts to enforce the policy." *Talal*, 403 F.3d at 427 (quoting *Scott v. Dist. of Columbia*, 139 F.3d 940, 942-44 (D.C. Cir. 1998)).

First, Defendants have failed to present any evidence supporting the conclusion that they (or anybody else) made a good faith effort to enforce the MDOC's ban on smoking in the general population housing units. Moreover, any such evidence is countered by Plaintiff's claim that:

> When you walk into the unit, the first thing you smell is tobacco smoke; when you walk down the halls, it is so strong that it covers all smells. The ceiling fans constantly circulate the smoke so that no area in the unit is free of ETS.

On April 10, 2006, health care officials issued to Plaintiff a special accommodation to be placed in smoke-free housing. Plaintiff's request to be placed in the tobacco-free unit was ignored, despite his assertion that exposure to second-hand smoke in the general population housing unit was causing him to experience adverse health effects such as dizziness and an accelerated heart rate.

On April 18, 2006, Plaintiff "passed out" and was taken to the hospital. Plaintiff was diagnosed with "severe-asthma resulting from second-hand-smoke." On April 19, 2006, physician's assistant Tyree reported that Plaintiff's "exposure to cigarette smoke triggered a bronchospasm that resulted in a syncopal episode." Plaintiff's request to be placed in the tobacco-free housing unit was again ignored. On April 25, 2006, physician's assistant Tyree reiterated that Plaintiff be housed in a "smoke free environment." Defendants, however, continued to incarcerate Plaintiff in the general population housing unit.

On May 1, 2006, Plaintiff reported to a nurse that he was "around too much cigarette smoke and it makes him feel like he can't get enough air." Plaintiff was nonetheless returned to the general population housing unit. On May 4, 2006, Plaintiff was taken to the emergency room after experiencing difficulty breathing caused by being housed in the "smoking area of the prison." Plaintiff was diagnosed with a "bronchial irritation" for which avoidance of second hand smoke was prescribed. Only then was Plaintiff transferred to the tobacco-free housing unit.

Taken in a light most favorable to Plaintiff, this evidence certainly supports the conclusion that Defendants "actually knew" that housing Plaintiff in the general population housing unit posed a "substantial risk of serious harm" to his health. As for whether Defendants failed to "take reasonable measures to abate" the risk to Plaintiff's health, Defendants assert that because they placed Plaintiff on the waiting list to be transferred to the tobacco-free housing unit they acted reasonably.

Considering the medically documented adverse health effects Plaintiff was experiencing as a result of exposure to second-hand smoke (as well the multiple recommendations by Plaintiff's care providers that he be housed in a smoke-free environment), a reasonable person could certainly conclude that to do nothing more in response than place Plaintiff's name on a list was unreasonable and evidenced utter disregard for Plaintiff's health and well being.

In sum, the evidence and submissions thus far presented, when considered in a light most favorable to Plaintiff, could very well support a finding that Defendants violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. The Court concludes, therefore, that Defendants are not entitled to summary judgment.

**II.        Defendants are not Entitled to Qualified Immunity**

Defendants also assert that they are entitled to qualified immunity. The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of harassing litigation. *See Davis v. Scherer*, 468 U.S. 183, 195 (1984). As is well recognized, they can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages, and if unjustified lawsuits are quickly terminated. *Id.*

Generally, when government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996); *Hughes v. City of North Olmsted*, 93 F.3d 238, 241 (6th Cir. 1996). The question of whether qualified immunity attaches to an

official's actions is purely a legal question for the trial judge to determine prior to trial. *See Bell-Bey v. Williams*, 87 F.3d 832, 836 (6th Cir. 1996).

In determining whether an official is entitled to qualified immunity, the focus is on the objective legal reasonableness of the official's actions in light of clearly established law. *See Harlow*, 457 U.S. at 818; *Bell-Bey,* 87 F.3d at 836. Defendants are entitled to qualified immunity unless the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *McBride v. Village of Michiana*, 100 F.3d 457, 460 (6th Cir. 1996) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The unlawfulness of the conduct at issue must be apparent in light of pre-existing law. *See Anderson*, 483 U.S. at 640.

Generally, to find a clearly established constitutional right, the district court must find binding precedent by the Supreme Court, its Court of Appeals or itself. *See Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177-78 (6th Cir. 1988). In extraordinary circumstances, however, the decisions of other courts may suffice if such decisions both point unmistakably to the unconstitutionality of the conduct complained of and are so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting. *Id.* A single idiosyncratic opinion from another circuit's court of appeals, however, is insufficient to put a defendant on notice of how the Sixth Circuit might decide the issue in question. *See Davis v. Holley*, 835 F.2d 1175, 1182 (6th Cir. 1987).

In the Court's estimation, no credible argument can be advanced that a reasonable official would fail to have understood that the actions which Plaintiff *alleges* Defendants to have undertaken violate Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. The Court recommends, therefore, that Defendants are not entitled to qualified immunity.

**CONCLUSION**

As discussed herein, the Court recommends that <u>Defendants Bell's, Gidley's, Baker's, McQueary's, Miller's and Kipp's Motion for Summary Judgment</u>, (Dkt. #18), be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  March 27, 2007

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge