UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WANTWAZ DAVIS,

       Plaintiff,                        Hon. Gordon J. Quist

v.                                          Case No. 1:06 CV 690

THOMAS BELL, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>. (Dkt. #85). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part and denied in part**.

## BACKGROUND

Pursuant to Michigan Department of Corrections (MDOC) regulations, smoking (or the use of any tobacco product) is prohibited "inside all Department occupied buildings, including prisoner housing units." Michigan Department of Corrections Policy Directive 01.03.140 ¶¶ B-C. General population prisoners are nonetheless permitted to possess smoking materials in their cells. *Id.* at ¶¶ I-K. Pursuant to MDOC regulations each MDOC facility is also required to maintain "tobacco-free housing for general population prisoners." *Id.* at ¶ M. Prisoners residing in a tobacco-free housing unit are not permitted to smoke (or use tobacco products) and are further prohibited from even purchasing or possessing smoking materials. *Id.* at ¶ N.

Plaintiff asserts that despite the MDOC's smoking ban prison officials are "well-aware" that general population prisoners continue to smoke in the "non-smoking" housing units. (Dkt. #28 at 2). According to Plaintiff, prison officials issue "hundreds" of misconduct tickets daily to prisoners who are caught smoking in the general population housing units. *Id.* Plaintiff further asserts that:

> When you walk into the unit, the first thing you smell is tobacco smoke; when you walk down the halls, it is so strong that it covers all smells. The ceiling fans constantly circulate the smoke so that no area in the unit is free of ETS [environmental tobacco smoke].

(Dkt. #28 at 3).

Plaintiff was transferred to the Boyer Road Correctional Facility (OTF) on April 8, 2006, and housed in the general population. (Dkt. #19, Bell Affidavit; Dkt. #27 at 2). On April 10, 2006, health care officials issued to Plaintiff a special accommodation to be placed in smoke-free housing. (Dkt. #28, Exhibit A). On April 12, 2006, Plaintiff requested that he be transferred to the "tobacco-free housing unit." (Dkt. #1 at 4; Dkt. #28 at 1). Prison officials responded to Plaintiff's request by stating that he was "2nd on non-white list." (Dkt. #28 at 1; Dkt. #28, Exhibit B). On April 14, 2006, Plaintiff submitted a Step I grievance in which he again requested to be transferred to the "non-smoking" housing unit. (Dkt. #28 at 2; Dkt. #28, Exhibit C). Plaintiff asserted that the requested transfer was necessary because he was "still being ailed by second hand smoke" that caused him to experience dizziness and an accelerated heart rate. (Dkt. #28, Exhibit C).

On April 18, 2006, Plaintiff "passed out in the [housing] Unit from being subjected to 'secondary' tobacco smoke." (Dkt. #28 at 2). Plaintiff was "rushed" to the hospital where he was diagnosed with "severe-asthma resulting from second hand smoke." The following day, Plaintiff was examined by physician's assistant Howard Tyree who concluded that Plaintiff's "exposure to cigarette smoke triggered a bronchospasm that resulted in a syncopal episode." (Dkt. #28 at 2; Dkt. #28, Exhibit

D). Despite the recommendation from health care officials that Plaintiff be placed in a "tobacco-free-non-smoking-unit," Plaintiff was returned to the general population. (Dkt. #28 at 2).

On April 25, 2006, Plaintiff was again examined by physician's assistant Tyree. (Dkt. #28 at 2; Dkt. #28, Exhibit D). Plaintiff reported that he was "tolerating more exertion," but was still experiencing shortness of breath. (Dkt. #28, Exhibit D). Plaintiff also reported that he was "regularly awakened (3 times nightly) with shortness of breath [and] cough." Plaintiff was diagnosed with asthma and enrolled in the pulmonary clinic. Mr. Tyree reiterated that Plaintiff be housed in a "smoke free environment." *Id.*

On May 1, 2006, Plaintiff was examined by Amie Jo Gaskill, R.N. (Dkt. #28 at 3; Dkt. #28, Exhibit E). Plaintiff reported that he was "around too much cigarette smoke and it makes him feel like he can't get enough air." (Dkt. # 28, Exhibit E). Plaintiff asked the nurse "how long he has to wait to get to the non-smoking unit." According to Nurse Gaskill, Defendant Kipp informed her that Plaintiff was "on the top of the list" to be moved to the tobacco-free housing unit. *Id.*

On May 4, 2006, Plaintiff was taken to the emergency room after experiencing difficulty breathing. (Dkt. #28 at 3; Dkt. #28, Exhibit F). Plaintiff reported that his breathing difficulty resulted from being housed in the "smoking area of the prison." (Dkt. #28, Exhibit F). Plaintiff again requested a transfer to the "non-smoking" housing unit. *Id.* Plaintiff was diagnosed with a "bronchial irritation" for which avoidance of second hand smoke was prescribed. (Dkt. #28 at 3; Dkt. #28, Exhibit G). Plaintiff was transferred to the tobacco-free housing unit later that day. (Dkt. #28 at 3).

Plaintiff asserts that residing in the general population housing unit, in which prisoners routinely smoked, caused him to experience "sustainable injuries" to his health. *Id.* Plaintiff claims that by failing to promptly transfer him to the tobacco-free housing unit Defendants violated his Eighth

Amendment right to be free from cruel and unusual punishment. (Dkt. #1; Dkt. #28). On January 17, 2007, Defendants moved for summary judgment. (Dkt. #18). The undersigned recommended that Defendants' motion be denied, a recommendation which was subsequently adopted by the Honorable Wendell A. Miles on May 24, 2007. (Dkt. #30, 34). Defendants now move for partial summary judgment. Specifically, Defendants assert that Plaintiff is not entitled to future damages for any alleged future harm he may suffer. Also, Defendant Bell seeks summary judgment as to all Plaintiff's claims against him.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue

for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324).  The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor. *See Niemi v. NHK Spring CO., Ltd.*, - - - F.3d - - -, 2008 WL 4273123 at *3 (6th Cir., Sept. 19, 2008).  Nevertheless, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357.  The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252).  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54.  In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## ANALYSIS

**I.        Defendant Bell is Not Entitled to Summary Judgment**

Plaintiff's claim against Defendant Bell is that he denied Plaintiff's request to be placed in tobacco-free housing, thereby causing Plaintiff to suffer asthma as a consequence of exposure to second-hand smoke. (Dkt. #1). Plaintiff's complaint, while certainly satisfying the notice pleading standards articulated in the Federal Rules of Civil Procedure, does not contain a wealth of factual allegations. Naturally, when Defendants subsequently deposed Plaintiff, they attempted to determine the precise extent to which Defendant Bell was allegedly involved in the conduct giving rise to Plaintiff's complaint. In his deposition, Plaintiff testified that Defendant Bell's involvement in this matter was limited to two events: Defendant Bell (1) allegedly denied a grievance that Plaintiff filed, and (2) failed to respond to a kite that Plaintiff sent to Bell. (Dkt. #86, Exhibit 1 at 92-93).

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005).

The analysis by which Defendant's conduct is evaluated consists of two steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of

serious harm." *Farmer*, 511 U.S. at 834. If the objective test is met, the Court must then determine whether Defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.*

In other words, Plaintiff must establish that Defendant "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847).

Defendant Bell asserts that he is entitled to summary judgment because "he did not have the requisite personal involvement to be liable under 42 U.S.C. § 1983." To the extent that Plaintiff's claim is based upon Defendant Bell's denial of a grievance, Defendant Bell is certainly entitled to summary judgment. *See Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (liability in a § 1983 action cannot be premised upon passive behavior or an alleged failure to act, rather liability must be based upon active unconstitutional behavior); *Skinner v. Govorchin*, 463 F.3d 518, 525-26 (6th Cir. 2006) (liability in a § 1983 action does not attach based upon allegations that a defendant simply denied a prisoner's grievance).

As noted above, however, Plaintiff also testified that in addition to denying his grievance Defendant Bell also failed to respond to a kite that Plaintiff sent to Bell. Plaintiff has submitted a copy of the correspondence in question. (Dkt. #88, Exhibit A at page 8 of 13). In this note, dated April 26, 2006, Plaintiff asserted that he was suffering from "over inhalation of second hand smoke." Plaintiff

further asserted that despite twice being prescribed medical details for placement in tobacco-free housing, prison officials had not yet secured his transfer. *Id.* Defendant Bell argues that he is entitled to summary judgment because Plaintiff "has no proof that Bell ever received the kite [Plaintiff] sent him." The Court disagrees.

Defendant Bell does not challenge Plaintiff's assertion that he sent the kite to him. Defendant Bell also does not claim that he never received Plaintiff's kite. In fact, Defendant Bell has submitted no *evidence* in support of his motion for summary judgment. While Defendant is correct that Plaintiff has failed to submit evidence *directly* establishing that Defendant Bell received the kite in question, the Court must nonetheless view the evidence thus far submitted in the light most favorable to Plaintiff and draw all reasonable inferences therefrom in his favor. Plaintiff testified that he sent the kite in question to Defendant Bell, an assertion which Defendant Bell has not challenged. The Court concludes that, in the absence of any evidence to the contrary, it is reasonable to infer that Defendant Bell received in the ordinary course of business mail directed to him through the prison mail system.

Defendant Bell has, therefore, failed to establish the absence of a genuine issue of fact. Based on Plaintiff's allegations and the evidence thus far submitted, a reasonable juror could conclude that Defendant Bell received Plaintiff's kite (i.e., a request for medical treatment) and that Defendant Bell took no action in response. Thus, a reasonable juror could find that Defendant Bell "actually knew" that Plaintiff "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it."

Accordingly, the Court recommends that Defendant Bell's motion for summary judgment be granted in part and denied in part. Specifically, to the extent that Plaintiff seeks to impose liability on Defendant Bell for rejecting his grievance, the Court recommends that Defendant Bell is entitled to

summary judgment. On the other hand, with respect to Plaintiff's claim that Defendant Bell took no action in response to the kite he sent to him, the Court recommends that Defendant Bell is not entitled to summary judgment.

II.     **Plaintiff's Claim for Future Damages**

In addition to seeking injunctive relief, Plaintiff seeks monetary damages in excess of one million dollars because his "present health and future health" have been "ruined" due to his exposure to second hand smoke. Defendants assert that because Plaintiff "has put forth no expert medical evidence regarding any future injuries he might suffer," he is precluded from recovering damages for any alleged future injury because such damages are based on nothing more than "conjecture or speculation." The Court agrees.

The United States Supreme Court has long recognized that 42 U.S.C. § 1983 creates "'a species of tort liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Memphis Community School District v. Stachura*, 477 U.S. 299, 305-06 (1986) (quoting *Carey v. Piphus*, 435 U.S. 247, 253 (1978)). In a § 1983 action, the ability to recover damages "is ordinarily determined according to principles derived from the common law of torts." *Stachura*, 477 U.S. at 306 (citations omitted). The "basic purpose" of compensatory damages in a § 1983 action is "to *compensate persons for injuries* that are caused by the deprivation of constitutional rights." *Id.* at 307 (quoting *Carey*, 435 U.S. at 254) (emphasis in original). Accordingly, where a plaintiff fails to demonstrate the existence of injury, compensatory damages are not permitted. *See Stachura*, 477 U.S. at 307-08; *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 600-01 (6th Cir. 2006).

While 42 U.S.C. § 1983 creates a federal cause of action for deprivation of an individual's constitutional rights, the text of § 1983 does not identify the nature of damages available in such an action. *See, e.g., Tinch v. City of Dayton*, 1996 WL 77445 at *1 (6th Cir., Feb. 20, 1996) (citations omitted). The Court must turn, therefore, to a different provision of federal law, 42 U.S.C. § 1988, which provides that:

> The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes[1] for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

42 U.S.C. § 1988(a).

In the absence of controlling federal authority directly applicable to Plaintiff's claim for future injury damages, the Court must turn to Michigan law.[2] As the Michigan Supreme Court recently held, where a plaintiff's "claim is for injuries they *may* suffer in the future, their claim is precluded as a matter of law, because Michigan law requires more than a merely speculative injury." *Henry v. The Dow Chemical Co.*, 701 N.W.2d 684, 688 (Mich. 2005) (emphasis added). As the *Henry* court further

---

[1] 42 U.S.C. § 1983 was part of Title 24 of the Revised Statutes of 1873. *See Pokorney v. Miami Valley Career Technology Center*, 1997 WL 1764769 at *4 (S.D. Ohio, March 31, 1997). Thus, this particular provision applies in the present instance.

[2] The Court notes that Defendants, in support of their motion, rely exclusively upon two federal cases: *Henderson v. Sheahan*, 196 F.3d 839 (7th Cir. 1999) and *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188 (6th Cir. 1988). The *Henderson* case applied Illinois law and the *Velsicol* case applied Tennessee law. Thus, these two cases are not directly applicable to the question presented.

stated, "if the alleged damages cited by plaintiffs were incurred in anticipation of possible future injury rather than in response to present injuries, these pecuniary losses are not derived from an injury that is cognizable under Michigan tort law." *Id.* at 689. As previously noted, the United States Supreme Court has held that compensatory damages are not appropriate unless the plaintiff can demonstrate the existence of an actual injury. The Court, therefore, finds that this authority is not inconsistent with federal law.

On September 18, 2007, the Honorable Wendell A. Miles issued a Case Management Order providing that Plaintiff was required to disclose the names of any expert witnesses no later than November 15, 2007. (Dkt. #45). The Court further directed that discovery in this matter was to be completed by March 15, 2008. *Id.* There is no indication that Plaintiff has identified any expert witnesses or engaged in any discovery. In response to the present motion Plaintiff has presented no evidence from which a reasonable person could conclude that his request for damages due to an alleged future injury is based on anything other than conjecture or speculation. Such cannot form the basis of relief, however, as discussed above. Accordingly, the Court recommends that Defendants' motion to preclude Plaintiff from recovering damages for any alleged future injury be granted.

**CONCLUSION**

As discussed herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (dkt. #85), be **granted in part and denied in part**. Specifically, the undersigned recommends that Defendant Bell is entitled to summary judgment as to Plaintiff's claim that he improperly rejected his grievance. However, as to Plaintiff's claim that Defendant Bell took no action in response to Plaintiff's request for medical care, the undersigned recommends that Defendant Bell is not entitled to summary judgment. Finally, the undersigned recommends that Defendants are entitled to summary judgment as to Plaintiff's claim for monetary damages resulting from future injury.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  September 30, 2008          /s/ Ellen S. Carmody
                                   ELLEN S. CARMODY
                                   United States Magistrate Judge